# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA WATERS, Individually and For Others Similarly Situated | **Case No.** _____4:26-CV-2117_____ |
| v. | Jury Trial Demanded |
| THE GUTHRIE CLINIC f/k/a GUTHRIE HEALTH | FLSA Collective Action<br>Rule 23 Class Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Jessica Waters (Waters) brings this class and collective action to recover unpaid wages and other damages from The Guthrie Clinic f/k/a Guthrie Health (Guthrie).

2.      Guthrie employed Waters as one of its Hourly Employees (defined below) in Pennsylvania.

3.      Guthrie paid Waters and the other Hourly Employees by the hour.

4.      Waters and the other Hourly Employees regularly work more than 40 hours in a workweek.

5.      But Guthrie does not pay Waters and the other Hourly Employees at their agreed hourly rates for all hours worked, including overtime hours.

6.      Instead, Guthrie automatically deducts 30 minutes a day from Waters and the other Hourly Employees for so-called "meal breaks" (Guthrie's "auto-deduction policy").

7.      But Guthrie regularly fails to provide or make available *bona fide* 30-minute meal breaks to Waters and the other Hourly Employees.

8.      Rather, Guthrie requires them to remain on duty throughout their shifts and/or subjects them to interruptions during their unpaid, off the clock "meal breaks."

9.      Guthrie thus does not pay Waters and the other Hourly Employees at their agreed hourly rates for all hours worked.

10.     Additionally, Guthrie requires the Hourly Employees to clock in and out for their shifts via its timekeeping system but automatically rounds their clock in and clock out punches to the nearest quarter hour (Guthrie's "rounding policy").

11.     Guthrie rounds Waters's and the other Hourly Employees' clock in and clock out times to the nearest quarter hour for its primary benefit and to the detriment of these employees.

12.     Finally, Guthrie does not pay Waters and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

13.     Instead, Guthrie pays Waters and the other Hourly Employees non-discretionary bonuses, including sign on bonuses, that it excludes from their regular rates of pay for overtime purposes (Guthrie's "bonus pay scheme").

14.    Guthrie's auto-deduction policy, rounding policy, and bonus pay scheme violate the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA) because these policies deprive Waters and the other Hourly Employees of premium overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

15.    Additionally, Guthrie's auto-deduction policy, rounding policy, and bonus pay scheme violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Waters and the other Hourly Employees of agreed, earned wages, including overtime wages, on their regular paydays and/or following the termination of their employment.

### JURISDICTION & VENUE

16.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17.    The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.    This Court has general personal jurisdiction over Guthrie because it is domestic nonprofit corporation.

19.    Venue is proper because Guthrie maintains its principal place of business in Sayre, Pennsylvania, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

20. Guthrie employed Waters as a care partner/unit clerk from approximately November 2023 until December 2025.

21. Throughout her employment, Guthrie classified Waters as non-exempt and paid her by the hour.

22. Waters's written consent is attached as **Exhibit 1**.

23. Waters brings this class and collective action on behalf of herself and similarly situated Guthrie employees.

24. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees Guthrie employed under its auto-deduction policy, rounding policy, and/or bonus pay scheme at any time during the past 3 years through final resolution of this action (the "FLSA Collective Members").**

25. Waters also seeks to represent a Pennsylvania class under FED. R. CIV. P. 23 defined as:

> **All hourly employees who worked in, or were based out of, Pennsylvania[1] who Guthrie employed under**

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at \*2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's

**its auto-deduction policy, rounding policy, and/or bonus pay scheme during the past 3 years through final resolution of this action (the "Pennsylvania Class Members").**

26.     The FLSA Collective Members and Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

27.     Guthrie is a Pennsylvania nonprofit corporation that maintains its headquarters in Sayre, Pennsylvania.

28.     Guthrie may be served with process through its officers, directors, managing agents, or other authorized agent at its registered address: **1 Guthrie Square, Sayre, Pennsylvania 18840**.

### COVERAGE UNDER THE FLSA

29.     At all relevant times, Guthrie has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

30.     At all relevant times, Guthrie has been as an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

31.     At all relevant times, Guthrie has been "engaged in the operation of a hospital" and/or operated "an institution primarily engaged in the care of the sick, the

---

physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

aged, or the mentally ill or defective who reside on the premises of such institution." 29 U.S.C. § 203(s)(1)(B).

32. Guthrie is thus an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

33. Guthrie has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cellphones, computers, medical tools and equipment, personal protective equipment, etc., that have been moved in or produced for commerce.

34. At all relevant times, Waters and the Hourly Employees were Guthrie's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

36. Guthrie operates 77 regional offices, 6 hospitals, and "has more than 1.5 million patient visits each year in 29 communities in Pennsylvania and New York."[2]

37. To meet its business objectives, Guthrie employs workers, like Waters and the other Hourly Employees, to provide healthcare services to its patients.

---

[2] https://www.guthrie.org/about-us/guthrie-history (last visited July 13, 2026).

38.    Guthrie advertises open positions across all its facilities and solicits applications for these positions through its website.[3]

39.    For example, Guthrie employed Waters, in a dual-role position, as a care partner/unit clerk in its Guthrie Robert Packer Hospital from approximately November 2023 until December 2025.

40.    Waters's job duties included assisting nurses with patient care in the intensive care unit, including taking vitals and drawing blood, preparing patients for transfer by ensuring all necessary charting is completed and on hand, and answering phone calls.

41.    Waters regularly worked more than 40 hours in a workweek.

42.    Indeed, Waters typically worked approximately 12 hours a day, 3 to 4 days a week "on the clock" (36 to 48 hours in a workweek).

43.    Guthrie paid Waters approximately $24 an hour.

44.    Likewise, the other Hourly Employees typically work approximately 12 hours a day, 3 or 4 days a week "on the clock" (36 to 48 hours in a workweek).

45.    And Guthrie requires Waters and the other Hourly Employees to report their "on the clock" hours via the timekeeping system it selects and controls.

---

[3] https://careers.guthrie.org/#en/sites/CX_1001/jobs *and* https://careers.guthrie.org/#en/sites/CX_1001/jobs?location=18840%2C+Sayre%2C+United+States&locationId=300000007927690&locationLevel=city&mode=location&radius=25&radiusUnit=MI (last visited July 14, 2026).

7

46.     At the end of each pay period, the Hourly Employees receive wages from Guthrie determined by common systems and methods that Guthrie selects and controls.

47.     Waters and the other Hourly Employees perform their jobs under Guthrie's supervision, policies, and procedures and use materials, equipment, and technology Guthrie approves and supplies.

48.     But Guthrie does not pay Waters and the other Hourly Employees at their agreed rates for all hours worked.

49.     Instead, Guthrie subjects Waters and the other Hourly Employees to its common practice of automatically deducting 30 minutes from their hours and wages each shift for "meal breaks."

50.     Guthrie simply assumes that Waters and the Hourly Employees receive a *bona fide* meal break each workday.

51.     But Guthrie fails to provide or make available *bona fide* meal breaks.

52.     Instead, largely due to a lack of available coverage and the need to respond to urgent patient needs, Guthrie requires Waters and the other Hourly Employees to remain on duty and working throughout their shifts and regularly subjects them to interruptions during their unpaid, so called "meal breaks."

53.     Because of these regular work interruptions, Waters and the Hourly Employees are not free to engage in personal activities during unpaid "meal breaks."

54.    Rather, during unpaid "meal breaks," Waters and the Hourly Employees are required to perform their regular job duties and responsibilities.

55.    Thus, Waters and the Hourly Employees routinely spend their unpaid "meal breaks" performing their normal job duties for Guthrie's, not their own, predominant benefit.

56.    This unpaid time is compensable under the FLSA and Pennsylvania law because Guthrie knew, or should have known, that (1) Waters and the Hourly Employees were performing unpaid work during "meal breaks," (2) they were interrupted with work duties during attempted "meal breaks," (3) they were not completely relieved of all duties during "meal breaks," (4) they entirely skipped "meal breaks" due to work demands, (5) the "meal breaks" were less than 30 consecutive minutes, (6) they were not free to engage in personal activities during "meal breaks" because of frequent interruptions, (7) they remained on Guthrie's premises, under Guthrie's supervision during unpaid "meal breaks"; and/or (8) they spent their unpaid "meal breaks" performing their regular duties for Guthrie's predominant benefit.

57.    In addition to automatically deducting from these employees' hours and wages for so called "meal periods," Guthrie also subjects Waters and the other Hourly Employees to its rounding policy.

58.    Specifically, Guthrie automatically rounds Waters's and the other Hourly Employees' clock in and clock out punches to the nearest quarter hour for Guthrie'sprimary benefit and to the detriment of these employees.

9

59. Guthrie prohibits Waters and the other Hourly Employees from clocking in for their shifts more than 7.5 minutes before their scheduled start times and clocking out more than 7.5 minutes after their scheduled end times.

60. Guthrie takes disciplinary action or threatens to do so if these employees clock in more than 7.5 minutes prior to their scheduled start time or clock out more than 7.5 minutes after their scheduled end time.

61. And Guthrie considers Waters and the other Hourly Employees late and takes disciplinary action or threatens to do so if they clock in even a minute after their scheduled start time and likewise considers them to leave early if they clock out even a minute before their scheduled end time.

62. Guthrie further requires and expects Waters and the other Hourly Employees to perform their normal job duties immediately upon clocking in.

63. By enforcing these policies, Guthrie ensures its rounding policy benefits Guthrie and detriments Waters and the other Hourly Employees because it results in a net underpayment of wages to Waters and the other Hourly Employees.

64. Thus, under Guthrie's rounding policy, Waters and the other Hourly Employees are denied wages at their agreed rates for hours worked, including overtime wages during workweeks in which they work more than 40 hours.

65. Guthrie fails to exercise its duty as Waters's and the other Hourly Employees' employer to ensure these employees are not performing work that Guthrie does not want performed "off the clock."

10

66. Guthrie knows, should know, or recklessly disregards whether Waters and the other Hourly Employees routinely perform work "off the clock" during "meal breaks," as well as immediately preceding and following their shifts.

67. Despite accepting the benefits, Guthrie does not pay Waters and the other Hourly Employees for the compensable work they perform during automatically deducted "meal breaks" and that is rounded away.

68. Finally, Guthrie does not pay Waters and the other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

69. Instead, Guthrie pays Waters and the other Hourly Employees under its bonus pay scheme.

70. Specifically, Guthrie agrees to pay and subsequently pays Waters and the other Hourly Employees non-discretionary bonuses, including sign on bonuses, if they fulfill Guthrie's criteria.

71. But Guthrie fails to include these non-discretionary bonuses in Waters's and the other Hourly Employees' regular rates of pay for overtime purposes during workweeks they work more than 40 hours.

72. For example, Guthrie promised to pay and subsequently paid Waters a sign on bonus of approximately $5,000 in three installments during 2024 and 2025, in exchange for her fulfilling its requirement of continued employment in good standing.

11

73. But Guthrie excluded this sign on bonus from her regular rate of pay for overtime purposes during all workweeks in 2024 and 2025 that she worked more than 40 hours.

74. Thus, under its bonus pay scheme, Guthrie does not pay Waters and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

75. As a result of Guthrie's auto-deduction policy, rounding policy, and bonus pay scheme, Waters and the other Hourly Employees are denied earned wages for hours worked, including overtime wages for overtime hours.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

76. Waters brings her Pennsylvania state law claims as a class action pursuant to FED. R. CIV. P. 23 and brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and similarly situated employees.

77. Like Waters, the other Hourly Employees are victimized by Guthrie's auto-deduction policy, rounding policy, and/or bonus pay scheme.

78. Other Hourly Employees worked with Waters and indicated they were paid in the same or similar manner, performed similar work, and were subject to Guthrie's same or similar auto-deduction policy, rounding policy, and/or bonus pay scheme.

12

79.    Based on her experiences with Guthrie, Waters is aware Guthrie's auto-deduction policy, rounding policy, and bonus pay scheme were imposed on other Hourly Employees.

80.    The Hourly Employees are similarly situated in the most relevant respects.

81.    Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages for all hours worked, including overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

82.    Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

83.    Rather, the Hourly Employees are held together by Guthrie's auto-deduction policy, rounding policy, and bonus pay scheme, which systematically deprive them of earned wages at their agreed rates for all hours worked, including overtime wages for overtime hours worked.

84.    Guthrie's records reflect the number of hours the Hourly Employees recorded working "on the clock" each workweek.

85.    Guthrie's records reflect that it automatically deducted 30 minutes a workday for so called "meal breaks."

86.    Guthrie's records show it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its primary benefit and to the detriment of the Hourly Employees.

87. Guthrie's records also show it paid Waters and the other Hourly Employees sign on bonuses and other non-discretionary bonuses it excluded from their regular rates of pay for overtime purposes.

88. The back wages owed to Waters and the other Hourly Employees can be calculated using same formula applied to the same records.

89. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Guthrie's records, and there is no detraction from the common nucleus of liability facts.

90. Therefore, the issue of damages does not preclude class or collective treatment.

91. Waters's experiences are typical of the other Hourly Employees.

92. Waters has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

93. Waters has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Pennsylvania law.

94. Waters and her counsel will fairly and adequately protect the interests of the Hourly Employees.

95. Waters retained counsel with significant experience handling complex class and collective action litigation.

96.     Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Guthrie will reap the unjust benefits of violating the FLSA and Pennsylvania law.

97.     Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

98.     The multiplicity of actions would create hardship for the Hourly Employees, the Court, and Guthrie.

99.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

100.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

101.    Among the common questions of law and fact are:

    a.    Whether Guthrie automatically deducted 30 minutes from the Hourly Employees' hours for "meal breaks" that were not *bona fide*, continuous, and uninterrupted;

    b.    Whether Guthrie's auto-deduction policy deprived the Hourly Employees of agreed, earned wages for time worked during meal breaks that were not *bona fide*, continuous, and uninterrupted;

    c.    Whether Guthrie automatically rounded the Hourly Employees' punch in and out times for its own primary benefit;

d.    Whether Guthrie paid the Hourly Employees non-discretionary bonuses;

e.    Whether Guthrie excluded non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay for overtime purposes;

f.    Whether Guthrie's decision not to pay the Hourly Employees earned wages, including overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked, was made in good faith;

g.    Whether Guthrie failed to pay the Hourly Employees earned wages for all their hours worked, in violation of the WPCL that was not the result of a bona fide dispute; and

h.    Whether Guthrie's violations were willful.

102. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

103. The Hourly Employees are known to Guthrie, are readily identifiable, and can be located through Guthrie's business and personnel records.

### GUTHRIE'S VIOLATIONS WERE WILLFUL, UNREASONABLE, AND NOT THE RESULT OF A BONA FIDE DISPUTE

104. Guthrie knew it employed Waters and the other Hourly Employees.

105. Guthrie knew it was subject to the FLSA's and PMWA's overtime provisions.

106. Guthrie knew the FLSA and PMWA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

107. Guthrie knew it was subject to the WPCL.

108. Guthrie knew the WPCL required it to pay employees, including the Hourly Employees, all earned wages at the agreed rates (including overtime) on their regular paydays and following termination of employment.

109. Guthrie knew Waters and the other Hourly Employees were non-exempt employees entitled to overtime wages.

110. Guthrie knew Waters and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours via its timekeeping system.

111. Guthrie knew it was required to include the non-discretionary bonuses it paid the Hourly Employees in their regular rates of pay for overtime purposes.

112. Guthrie nonetheless knew it excluded this compensation from the Hourly Employees' regular rates of pay for overtime purposes.

17

113.    Guthrie knew it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own primary benefit and to the detriment of the Hourly Employees.

114.    Guthrie knew it failed to provide or make available *bona fide*, uninterrupted meal breaks to Waters and the other Hourly Employees.

115.    Guthrie knew Waters and the other Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

116.    Guthrie knew it required, requested, suffered, or permitted Waters and the other Hourly Employees to work for its predominant benefit during unpaid "meal breaks."

117.    Guthrie knew that as Waters's and the other Hourly Employees' employer it had a duty to ensure they were not performing work "off the clock" (without pay) that Guthrie did not want performed.

118.    Guthrie knew Waters and the other Hourly Employees regularly worked "off the clock" during their "meal breaks" performing their regular job duties for Guthrie's predominant benefit.

119.    Guthrie's failure to pay its Hourly Employees earned wages for all hours worked on regular paydays and following the termination of their employment was unreasonable.

120.    Guthrie's failure to pay its Hourly Employees their earned wages was not the result of a *bona fide* dispute.

18

121. Guthrie knowingly, wilfully, and/or in reckless disregard carried out its unlawful auto-deduction policy, rounding policy, and bonus pay scheme that deprived Waters and the other Hourly Employees of earned wages, including overtime wages at the required rate of pay—based on all remuneration—for overtime hours, in violation of the FLSA, PMWA, and WPCL.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

122. Waters brings her FLSA claim as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

123. Guthrie violated, and is violating, the FLSA by employing non-exempt employees such as the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours in excess of 40 in a workweek.

124. Guthrie's unlawful conduct harmed the FLSA Collective Members by depriving them of overtime wages they are owed.

125. Accordingly, Guthrie owes the FLSA Collective Members the difference between the wages paid and the overtime wages actually earned.

126. Because Guthrie knew or showed reckless disregard for whether its auto-deduction policy, rounding policy, and bonus pay scheme violated the FLSA, Guthrie owes the FLSA Collective Members these wages for at least the past 3 years.

19

127. Guthrie is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

128. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

129. Waters brings her PMWA claim as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

130. The conduct alleged violates the PMWA. 43 PA. STAT. §§ 333.101, *et seq.*

131. At all relevant times, Guthrie was subject to the PMWA because Guthrie was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

132. At all relevant times, Guthrie employed each Pennsylvania Class Members as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

133. The PMWA requires employers, like Guthrie, to pay non-exempt employees, including the Pennsylvania Class Members, overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

134. Guthrie violated, and is violating, the PMWA by employing non-exempt employees (the Pennsylvania Class Members) for workweeks in excess of 40 hours

without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

135. Guthrie's unlawful conduct harmed the Pennsylvania Class Members by depriving them of the overtime wages they are owed.

136. Accordingly, Guthrie owes the Pennsylvania Class Members the difference between the wages paid and the overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

137. Finally, the Pennsylvania Class Members are entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

<u>COUNT III</u>
**FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL**
**(WPCL CLASS)**

138. Waters brings her WPCL claims as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

139. Guthrie's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq.*

140. At all relevant times, Guthrie was subject to the WPCL because Guthrie was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

141. At all relevant times, Guthrie employed each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

142. The WPCL requires employers, like Guthrie, to pay employees, including the Pennsylvania Class Members, all wages (including overtime) earned, due, and owing

21

to them on their regular payday(s) and following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

143. Guthrie violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

144. The Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

145. Guthrie's unlawful conduct harmed the Pennsylvania Class Members by depriving them of earned wages they are owed.

146. Guthrie's failure to pay the Pennsylvania Class Members all their earned wages was not the result of a *bona fide* dispute.

147. Rather, Guthrie knowingly failed to pay earned wages to the Pennsylvania Class Members.

148. Accordingly, Guthrie owes the Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

149. Guthrie owes the Pennsylvania Class Members liquidated damages in an amount equal to 25% of the total amount of wages due, or $500, whichever is greater. *See* 43 PA. STAT. § 260.10.

150. Finally, the Pennsylvania Class Members are entitled to recover their attorney's fees and costs. See 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

151. Waters demands a trial by jury.

## RELIEF SOUGHT

Waters, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Waters and her counsel to represent the interests of the Hourly Employees;

d. An Order finding Guthrie liable to Waters and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

e. An Order finding Guthrie liable to Waters and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f. An Order finding Guthrie liable to Waters and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to the greater of 25% of their unpaid wages or $500;

g. A Judgment against Guthrie awarding Waters and the other Hourly Employees all their unpaid wages, liquidated damages, treble damages, and any other penalties available under the FLSA, PMWA, and/or WPCL;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: July 28, 2026

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/ Edmund C. Celiesius*
Edmund C. Celiesius
PA ID No. 326197
Michael A. Josephson*
PA ID No. 308410
Andrew W. Dunlap*
TX Bar No. 24078444
5847 San Felipe St, Suite 2400
Houston, Texas 77057
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
eceliesius@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice application forthcoming*

**ATTORNEYS FOR WATERS AND
THE HOURLY EMPLOYEES**